**SO ORDERED.**

**SIGNED this 07 day of December, 2006.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **CHRISTOPHER GARY JONES,** | **CASE NO. 05-16909** |
|                  **DEBTOR.** | **CHAPTER 7** |
| **J. MICHAEL MORRIS, Trustee,** | |
|                  **PLAINTIFF,** | |
| v. | **ADV. NO. 06-5015** |
| **SNAP-ON CREDIT, LLC and CHRISTOPHER GARY JONES,** | |
|                  **DEFENDANTS.** | |

**MEMORANDUM AND ORDER SUSTAINING THE CHAPTER 7 TRUSTEE'S
COMPLAINT TO AVOID AND RECOVER UNPERFECTED SECURITY INTEREST**

The matter before the Court is the Chapter 7 Trustee's Complaint to (1) Avoid and Recover

Unperfected Security Interests; (2) Turnover; and (3) Determination of Rights (Complaint). Plaintiff J.

Michael Morris, the Chapter 7 Trustee (Trustee), appears by Sarah L. Newell, Klenda, Mitchell, Austerman & Zuercher, L.L.C.. Defendant Snap-On Credit, LLC (Snap-On) appears by James M. McNeile and Kori Crouse of Cohen, McNeile & Pappas, PC. There are no other appearances. The Court has jurisdiction.[1]

This is an adversary proceeding by the Chapter 7 Trustee pursuant to 11 U.S.C. §§ 544(a), 550, and 551[2] to avoid and preserve the security interest of Defendant Snap-On in the Debtor's tools. The defendants are Snap-On and Christopher Gary Jones, the Debtor (Debtor). Debtor defaulted. Snap-On opposes the relief sought. The matter was taken under advisement after the Trustee and Snap-On agreed to a stipulation of facts and briefs were filed. The Court is now ready to rule.

**FINDINGS OF FACT**

The Trustee and Snap-On have filed a stipulation of facts. Based on that stipulation and other pleadings, the Court finds the following. On February 6, 1997, Debtor executed a Retail Installment Contract with Snap-On for the purchase of tools and equipment in the amount of $4,778.68. The contract included a grant of a security interest in the property being purchased and other goods bearing the Snap-On/Sun Electric trademark. From 1999 through July 31, 2003, Debtor executed Add-On Riders to Retail Installment Contract for the purchase of additional tools and equipment. These riders

---

[1] The parties have stipulated that the Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and § 1334 and this is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2). There is no objection to venue or jurisdiction over the parties.

[2] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

granted a security interest in the additional tools purchased. Snap-On filed a UCC-1 on August 11, 2003, in the office of the Secretary of State of the State of Kansas, listing the Debtor's name as "Chris Jones," naming Snap-On Credit, LLC as the secured party, and describing the collateral as tools and equipment then owned or later acquired by Debtor. Debtor filed for relief under Chapter 7 on October 5, 2005. The petition shows the Debtor's name to be Christopher Gary Jones, which is stipulated to be his "full name." Snap-On filed a proof of claim stating the amount due at the time the Debtor filed bankruptcy was $4,348.28. As to value of the collateral, the stipulation states, "The debtor prepared an itemization of Snap-On tools and estimated value listing the approximate outstanding debt to Snap-On to reaffirm." That itemization, which is attached as an exhibit to the stipulation, is a tool list itemizing numerous tools and for each tool the "current cost of purchasing same tool new." The aggregate of the current cost for the tools is $5,049. The Trustee performed an official UCC search for liens against Christopher Gary Jones with the Kansas Secretary of State's office using the "standard search logic" provided for in K.S.A. 84–9–506 and K.A.R. 7-17-22. The search under this name did not reveal any financing statements that matched this criterion.

A review of the pleadings establishes that Debtor's Schedule B, Personal Property, included automobile repair tools valued at $6,521.26 and that Debtor claimed the tools exempt under K.S.A. 60-2304(e). There is no objection to the exemption. Schedule D, secured claims, lists Snap-On as holding a claim for $6,521.26. The Debtor's Statement of Intention includes as a debt to be reaffirmed pursuant to § 524(c) the debt to Snap-On secured by the automobile repair tools. No reaffirmation agreement between Debtor and Snap-On has been filed.

3

The Trustee filed the adversary Complaint to avoid the lien in the exempt tools on January 6, 2006. Shortly thereafter, he filed a motion for an order directing the Debtor to make all payments due under the contracts with Snap-On to the bankruptcy estate, pending the outcome of the adversary action. Snap-On objected. By order filed on April 7, 2006, the motion was denied, Debtor was directed to continue to make payments to Snap-On, but it was also ordered "that in the event the trustee is successful in avoiding the lien of Defendant Snap-On Credit in the property, such monies will become property of the estate and Snap-On Credit will pay over to the trustee all payments received post petition."

Defendant Debtor did not answer or otherwise respond to the Complaint. Trustee moved for a default judgment, and Snap-On objected. An agreed order resolving the objection was entered that included the following:

> 4. Should the trustee prevail and avoid Snap-On's lien in the tools, the debtor shall then make monthly payments to the trustee pursuant to his original agreement with Snap-On. The debtor shall submit any such payment by check or money order payable to "J. Michael Morris, Trustee" and send the same to 301 N. Main, Suite 1600, Wichita, Kansas 67202-4888. Further, if the trustee prevails, Snap-On shall turnover all post-petition payments it received from the debtor to the trustee.
>
> 5. Upon information and belief, the balance as of the date of filing of the bankruptcy was $6,521.00.

**LIEN AVOIDANCE**

The Trustee contends Snap-On's security interest is avoidable pursuant to 11 U.S.C. § 544 (a)(2)[3] because it was not properly perfected as of the date of the bankruptcy. Specifically, the Trustee asserts that Snap-On was not properly perfected because Snap-On did not use the Debtor's full legal name, Christopher Gary Jones, on its financing statement and a search using the Kansas Secretary of State filing office's standard search logic did not disclose the security interest. Snap-On responds that its security interest was properly perfected by filing a financing statement using the name Chris Jones and the Trustee is not entitled to avoid the security interest.

Controlling law concerning lien avoidance is succinctly stated by the Tenth Circuit as follows:

> Section 544(a) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date bankruptcy petition is filed." *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1532 (10th Cir. 1987). Consequently, "[s]ection 544(a) allows the trustee to avoid any unperfected liens on property belonging to the bankruptcy estate." *Id*. The determination of whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a) is controlled by state law. *Id*. at 1533.[4]

---

[3] 11 U.S.C.§ 544(a) provides in part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of . . .
> ***
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;

[4] *Morris v. CIT Group/Equipment Financing, Inc. (In re Charles)*, 323 F.3d 841, 842-43 (10th Cir. 2003).

5

A lien creditor includes a "creditor that has acquired a lien on the property involved by attachment, levy, or the like" and "a trustee in bankruptcy from the date of the filing of the petition."[5] A security interest is "subordinate to the rights of . . . a person that becomes a lien creditor before the . . . security interest . . . is perfected."[6]

In this case, therefore, the right of the Trustee to avoid Snap-On's lien on the tools is determined by whether Snap-On had a perfected security interest when the bankruptcy was filed on August 11, 2003. Kansas law determines perfection and nonperfection.[7] The only manner in which Snap-On attempted to perfect its security interest was by filing a UCC-1 with the Kansas Secretary of State. K.S.A. 2003 Supp. 84-9-502(a)(1) provides that a financing statement is sufficient only if it "provides the name of the debtor." The sufficiency of the debtor's name in the financing statement is

---

[5] K.S.A. 2003 Supp. 84–9–102 (52).

[6] K.S.A. 2003 Supp. 84–9–317(a)(2).

[7] K.S.A. 2003 Supp. 84-9-301 and 307.

6

addressed by K.S.A. 2003 Supp. 84-9-503, sufficiency of the debtor's name,[8] and K.S.A. 2003 Supp. 84-9-506, effect of errors and omissions.[9] The Kansas Supreme Court has construed these sections together and held that the "name of the debtor" for purposes of a financing statement is the

---

[8] K.S.A. 2003 Supp. 84-9-503(a) provides in part:

**Name of the debtor and secured party.**
(a) **Sufficiency of debtor's name.** A financing statement sufficiently provides the name of the debtor:
(1) If the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized;
(2) if the debtor is a decedent's estate . . .
(3) if the debtor is a trust or a trustee . . .
(4) if the debtors are married debtors jointly engaged in business and it is unclear whether a partnership exists, the financing statement may be filed in the names of the individual debtors;
(5) in other cases:
(A) If the debtor has a name, only if it provides the individual or organizational name of the debtor; and
(B) if the debtor does not have a name, only if it provides the names of the partners, members, associates, or other persons comprising the debtor.

[9] K.S.A. 2003 Supp. 84-9-506 provides in part as follows:

**Effect of errors or omissions.**
(a) **Minor errors and omissions**. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
(b) **Financing statement seriously misleading.** Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2005 Supp. 84-9-503(a) and amendments thereto, is seriously misleading.
(c) **Financing statement not seriously misleading.** If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with K.S.A. 2005 Supp. 84-9-503(a) and amendments thereto, the name provided does not make the financing statement seriously misleading.

7

debtor's legal name and any error in that name will be seriously misleading and render the financing statement ineffective unless the name as used can be located by an official search using the debtor's legal name and the Secretary of State's standard search logic.[10] Applying this rule, the court found that a filing under the misspelled name "Roger House," rather than the correct name, "Rodger House," was seriously misleading. In so holding, the Kansas court agreed with the Tenth Circuit Bankruptcy Appellate Panel, which had held that a UCC-1 using the name "Terry J. Kinderknecht" was seriously misleading when the debtor's legal name was "Terrance Joseph Kinderknecht."[11]

This Court is constrained to follow the Kansas Supreme Court's construction of Article 9. The stipulated facts of this case are that the Debtor's full name (which the Court construes to mean his legal name[12]) is "Christopher Gary Jones," the UCC-1 filed by Snap-On stated the Debtor's name to be "Chris Jones," and an official search of the records of the Secretary of State's Office using the standard search logic did not produce Snap-On's UCC-1. As a matter of law, the UCC-1 was not effective to perfect Snap-On's security interest. When arguing to the contrary, Snap-On relies primarily upon *In re Erwin*, an unpublished opinion of Chief Judge Nugent filed in 2003.[13] Both the Kansas Supreme

---

[10] *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 130 P.3d 57 (2006).

[11] *Clark v. Deere and Co. (In re Kinderknecht)*, 308 B.R. 71 (10th Cir. BAP 2004).

[12] In the absence of any argument or facts to the contrary, the Court equates "full name" with "legal name."

[13] *In re Erwin*, 2003 WL 21513158, No. 02-10227, Adv. No. 02-5176 (Bankr. D. Kan. June 27, 2003).

8

Court[14] and the Tenth Circuit BAP[15] decisions cited and rejected *Erwin*. Snap-On's argument that a UCC-1 using the Debtor's nickname is not seriously misleading must be rejected.

For the foregoing reason, the Court sustains the Chapter 7 Trustee's complaint to avoid Snap-On's security interest in Debtor's tools.

**LIEN PRESERVATION AND TURNOVER**

If the Court found that Snap-On's line is not perfected and subject to avoidance under § 544, the Chapter 7 Trustee in the Complaint prayed for recovery of the security interest from Snap-On pursuant to § 550 and preservation of the lien for the benefit of the estate under § 551. The Trustee requests that Snap-On should be ordered to turn over to the Trustee all payments made by the Debtor post-petition, including any payments made after a finding of lien avoidance.

Upon avoidance of a lien, preservation pursuant to § 551 for the benefit of the estate is automatic.[16] The rights of the Chapter 7 Trustee upon avoidance and preservation of a lien in an exempt vehicle were addressed by the Tenth Circuit BAP *In re Rubia*.[17] In *Rubia*, the Chapter 7 Trustee, upon avoiding and preserving for the benefit of the estate a vehicle lien that lender had perfected during the 90 day preference period, filed a complaint to compel turnover of payments that the debtor had made to the lender post-petition. The court held that as a result of lien avoidance, the

---

[14] *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. at 212, 130 P.3d at 60.

[15] *In re Kinderknecht*, 308 B.R. at 75 n. 15.

[16] *Morris v. St. John Nat'l Bank (In re Haberman)*, 347 B.R. 411 (10th Cir. BAP 2006).

[17] *Morris v. Vulcan Chemical Credit Union (In re Rubia)*, 257 B.R. 324 (10th Cir. BAP), aff'd 23 Fed. Appx. 968 (10th Cir. 2001).

9

lender lost all rights to look to the motor vehicle to satisfy its claim, but did not lose the claim itself, which could be asserted as an unsecured claim for the entire amount of the debt. The court further held that while the Trustee succeeded to the lender's lien position, the Trustee did not have any rights to the $1,136.00 of post-petition payments which the debtor had made to the lender, even though the debt had not been reaffirmed. The court held that avoidance of the transfer of the security interest under § 547, with preservation for the benefit of the estate under § 551, did not give the Trustee the right to collect the secured obligation from the debtor post-petition. Only the creditor, not the Trustee, has the right to collect the debt, although the debt, after lien avoidance, is subject to discharge as an unsecured claim. The court further held that the value of the Trustee's lien position is measured by the value of the collateral on the date of filing, but is limited by the amount of the debt owed to the lender on the petition date. The court expressly found that the debtor has no in personam liability to the Trustee. "[A]bsent an agreement between the Trustee and the debtor requiring the debtor to pay for the [collateral], the Trustee has no right to collect anything from the debtor in as much as the Trustee's rights are solely in the [collateral]."[18] *Rubia* was recently followed by the Tenth Circuit BAP, which held that the trustee's recovery following avoidance of an unperfected lien in a vehicle was limited to the market value on the petition date.[19] As previously stated by this Court, after lien avoidance and preservation of the lien by § 551 for the benefit of the estate,

> The Trustee's rights . . . are in the property and, at least to the extent of
> maintaining priorities among creditors, in the lien, but do not include any
> rights against the Debtors personally or against the [creditor whose lien

---

[18] *Id.,* 257 B.R. at 329.

[19] *In re Haberman*, 347 B.R. at 415.

> was avoided]. Section 551 does not give the Trustee the ability to assert rights under the security agreement that granted the lien or under the note than had been secured by the lien. *Rubia* makes clear that the Trustee has no right to collect interest or fees provided for by the security agreement or note. . .. [T]he Trustee's rights are limited to an interest in the car itself.[20]

The application of *Rubia* to this case requires the Court to hold that the recovery by the Trustee is the value of the collateral on the date of filing, limited by the amount of the claim owed by the Debtor secured by the collateral on the date of filing. The amount of Snap-On's claim secured by the tools is not without question. Snap-On filed a secured proof of claim for $4,348.28, and this amount owed is included in the stipulation of facts. However, the order granting the Trustee's motion for default judgment against the Debtor states "upon information and belief" the amount of the claim as of the date of filing was $6,521.00, which is the value of the tools as stated on the Debtor's Schedule B and the amount of Snap-On's secured claim stated in Schedule D. The Court finds that the claim of Snap-On secured by the tools is $4,348.28. It finds this amount based upon the fact that the Proof of Claim was filed by the creditor under penalty for fraudulent claims and is the amount referenced in the stipulation, which was filed after the Debtor's schedules and the agreed order.

The value of the collateral is not expressly addressed by the stipulated facts, but there is no evidence that it is less than $4,348.28, the amount of the secured debt. The stipulation states, "the debtor prepared an itemization of Snap-On tools and estimated value listing the approximate outstanding debt to Snap-On to reaffirm." That itemization shows a value of $5,049. Debtor's Schedule B included automobile repair tools valued at $6,521.26. Snap-On filed a proof of claim

---

[20] *Morris v. St. John Nat'l Bank (In re Haberman)*, Case No. 02-11974, Adv. No. 02-5273 (Bankr. D. Kan. Feb. 10, 2006).

11

stating that the collateral value was equal to the claim amount of $4,348.28. The Court finds that the value of the collateral of the date of filing was at least $4,348.28.

Application of the rule that the Trustee may recover the value of the collateral, but not more than the claim secured by the collateral, results in $4,348.28 being the maximum that the Trustee may recover.

As stated above, under *Rubia*, absent agreement, the Trustee has no right to post-petition payments made to Snap-On before the lien avoidance order and no in personam rights against either Snap-On or the Debtor. In this case the Trustee has no agreement with the Debtor, who has not participated in the adversary proceeding. However, the order resolving Snap-On's objection to the Trustee's motion regarding payments pending resolution of the adversary resulted in an order, approved by counsel for Snap-On, that if the Trustee prevailed Snap-On would pay over to the Trustee all post-petition payments made by the Debtor. In addition, the agreed order resolving the Trustee's motion for default judgment against the Debtor, included a provision that if the Trustee prevailed the Debtor would make payments directly to the Trustee, rather than to Snap-On.

Based upon these orders, the Court finds that the limitations upon the Trustee's collection right stated in *Rubia* have been modified. Snap-On shall turn over to the Trustee all post-petition payments made to Snap-On by the Debtor on Snap-On's claim. As to payments due after the date of this order finding lien avoidance, there is no agreement with the Debtor, and Snap-On no longer has a right to collect payments from the Debtor for turnover to the Trustee. Assuming that the Debtor wishes to maintain possession of all of the collateral, an agreement between the Debtor and the Trustee will be

12

necessary, if the payments made by Debtor to Snap-On after filing and before this order are less than $4,328.48, the amount to be recovered by the Trustee.

**CONCLUSION**

The Court sustains the Trustee's complaint to avoid Snap-On's security interest in Debtor's tools based upon failure to properly perfect the lien. The Trustee is entitled to a recovery of $4,328.48. The Court will retain jurisdiction of this adversary proceeding pending notice that the Trustee will be able to fully recover without further assistance of the Court. The Trustee shall file a report with the Court within 30 days of this order stating the total received from Snap-On and the status of an agreement with the Debtor, if such is required.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

###